May it please the Court, I'm Thomas Mosley for Petitioner Darius Biskupski. With the Court's permission, I'd like to reserve two minutes for a rebuttal. The issue in this case is whether an alien person president of the United States for some 20 years can be deprived of statutory eligibility for relief from removal based upon the retroactive transformation of a federal misdemeanor, a federal misdemeanor for which he received 30 days in prison. You put an awful lot into that one sentence. You've got a misdemeanor issue in there, a retroactivity in there. I think what is the crux of the issue before us is the meaning of action taken in 321C. Are you going beyond that? No, absolutely not, Your Honor. I think I would not limit it, Judge McKee, to the meaning of action taken. I think we have to see this in the broader context, if you will, of what Congress intended with respect to IRA, IRA in creating a new procedure for removal cases and really eliminating or limiting those new procedures for cases such as Mr. Biskupski, which was a deportation case that had begun way back in January of 1994. This Court a long time ago in Scheidemann, for example, I think very soundly and reasonably held that the issue about definition of an aggravated felony is separate and apart from when and under what substantive context you apply that definition. That's really the crux or the issue. Clearly, especially in the immigration context, forgetting about the sentencing context, could clearly come up with a definition and call it. It's like the Cheshire cat. The word means exactly what Congress intended it to mean when Congress uses the word. It's not locked into this greater than one year disparity. Before getting to, and I will get separately to the issue of whether a misdemeanor can be transformed into an aggravated felony, I do not think that under the circumstances, we ought to assume that Congress chose to, if you will, employ the logic or the rubric of Humpty Dumpty, that a word means what I say it means and nothing more in this context. But with respect to the- Was it Humpty Dumpty or Through the Looking Glass? I thought it was Through the Looking Glass. I think it's Alice in Wonderland where Humpty Dumpty says to Alice, a word means what I say it means. Congress has not, in these circumstances, adopted the jurisprudence of Alice in Wonderland with respect to the meaning of felony. But to get to the point which your Honor, which Judge McKee recognizes is the crux of this issue, the issue of retroactivity, I think here, the Tron case from the Sixth Circuit very persuasively holds that Congress didn't intend, by actions taken, to apply the definitions of aggravated felony to ongoing deportation proceedings. And I think under those circumstances, I think Tron, which was certainly in a position to hold that, despite what the government has suggested, because the individual in that case had originally been put in deportation proceedings before these definitions came into play and then was subsequently put in the new removal proceedings. And Tron... But what about Grito-Morito? It's the same thing there, isn't it? Well, the Fifth Circuit decision is actually interesting in that it does help me on the aggravated felony point because there's language in there which says that, which says that the definition was intended only to pick up, was intended to only pick up felonies. But Morito-Patel on that issue. What? Morito-Patel on that issue. But Patel dealt only with the issue about whether... And Mr. Patel had been convicted of a felony harboring count. So he was not convicted, like Mr. Biskupski, of a misdemeanor of aiding and abetting someone unlawfully to enter the United States. But Grito-Morito is also interesting in that, first of all, from the Fifth Circuit, but it didn't involve a situation where an immigration judge had already made a determination of eligibility the way that it was done here, I believe, in 1996 by Judge Ragno up in Boston. But moreover, it's interesting because the Fifth Circuit panel there is at pains to say that no argument is being made or was made that the transitional rules of IRA-IRA should apply here. And that's where I think that Tron really, really gets its strong support because Congress in Section 309C of IRA-IRA, I know it's 2007 and we're still looking at the uncodified provisions of IRA-IRA given the difficulty of congressional drafting here. But that provision says, generally speaking, the new procedures that are being employed should not be applicable to pending proceedings. It gives the government some options in Section 309C. But it's also, I think, significant in that the only part of the new procedures that Congress intended to apply to this form of relief here, namely suspension of deportation, was the so-called stop time rule by which once you're served with a notice to appear, once you're served with an order to show cause, your approval of the necessary seven-year stops. So I think if you read actions taken in pari materia, as we should, and take the statute as a whole, take the structure of the statute as a whole, we come really to the point that Tron has certainly correctly decided that Congress didn't intend to apply this to pending proceedings. And this nevertheless left the government the option to terminate proceedings against Mr. Dostoevsky and put him in the new removal proceedings, which, of course, they didn't do here. Counsel, so is your position that actions taken, that we ought to hold actions taken, actually means when proceedings are initiated? I think that the construction I would urge here is that you ought to limit actions taken to actions taken in the new removal proceedings that were created by IRA and that actions taken should not apply to deportation proceedings such as Mr. Dostoevsky because of the general intent of Congress expressed in 309C that those proceedings shouldn't be subject, with certain exceptions not relevant here, those proceedings shouldn't be subject to, those proceedings shouldn't be subject to the new rules that Congress was creating by the new removal proceedings. And I think at the very least, at the very least, my point underscores what I would call the ambiguity that's inherent in terms of congressional intent. Since there is ambiguity in that congressional intent here, since there is disfractivity in terms of this, the fiscal decision, the consulting complaint is my point there when I said that what we can do with retroactive action is not shovel in the sand    of the action. It's not a murky, over eloquent overt saying, well you would expect that to happen. So we have a situation that is obviously very severe and new consequences have been attached to events that certainly antidate the initiation of deportation. When I went back and read St. Cyr again, initially I thought St. Cyr could be a big help for you. When I read it again, I wasn't as sure that it was as helpful for you as I initially thought it was. How does St. Cyr apply? I think St. Cyr is important in that it certainly recognizes about new consequences being attached to an act before. Now, St. Cyr does have language, and I'm sure the government will rely upon it, about the definitional section. And they specifically say in this inquiry... Right, the definitional section. But I think as this Court recognized in Scheidemann and as it's been recognized, for example, in Atkinson and elsewhere, that you have a new definition does not really beg the question about where that definition might be applied, and where and under what circumstances that definition might be applied to the substantive provisions at issue. Just to throw out a homely example, which I hasten to add has no relevance to my personal life, if the state legislature decides to define adultery as having lustful thoughts towards someone who is not your spouse and says that that definition applies whenever the lustful thoughts have occurred, that really begs the question about whether that definition is going to be applied to ongoing divorce proceedings or whether it's going to be applied to those provisions of the family law which bar child custody based on adultery or make adultery as a grounds for divorce. And that, I submit, is precisely the kind of situation that we're presented with here. That would lend itself to the classical biblical closing argument to the jury that he, and the jury, who is without doubt cast the first stone. I certainly, and as I say, that is the fundamental distinction. You have definitions, to be sure, and that's what St. Cyr really addresses. But the court there clearly uses this definitional enactment as an example of when Congress gave its explicit intent of retroactivity. Well, Congress gave the explicit intent of retroactivity under the circumstances of judgment in terms of the definitions, but what it did not do was to say where and under what circumstances those definitions would apply. That's the distinction, for example, as I say, that Scheidemann makes. But why doesn't 321C do that? Well, 321C, with respect to actions taken, is part of that. But all that I'm saying here is that 321C should be read in pari materia with 309, which expresses the general view that the new procedures enacted by Ira Irish should not apply to pending deportation proceedings with certain exceptions. And interestingly, those exceptions in the suspension context, as I've urged, those exceptions in the suspension context are only applying the so-called stop-time rules. It says nothing about applying the aggravated felony definitions or applying those in this context. And in any event, I would submit that this underscores the ambiguity in terms of ascertaining congressional intent so that we fall back to the second step in St. Cyr of attaching new consequences. I would just like to say that. Let me go back to the question of actions taken. Would you agree that the words actions taken have to apply to actions taken by the attorney general? I don't think, Judge Fischer, that that is a necessary conclusion. And I think, for example, that actions taken is a term that is not defined, that could very well mean actions taken by the attorney general in the new removal proceedings which are created by Ira Irish. I'm trying to limit you to my question. It seems to me that actions taken has to apply to actions taken by the attorney general. And if that's the case or could apply, then would the denial of discretionary relief here clearly be an action taken? If actions taken is read, and I submit that when you look at the structure of the statute as a whole, if actions taken is read to apply to ongoing deportation proceedings, which I submit Tron is very strong authority to the contrary. Isn't the language in Tron really dicta in that case? In too many cases, it's close to what you're looking for. Well, I would submit that it isn't dicta, Judge Fischer, because in that case, Tron had a situation, as I argued, that before he had been put in deportation proceedings. And so it would make sense for Tron to say that that was Congress's intent not to do that. Moreover, not just Tron, even the government's authority, the Rita Morta from the Fifth Circuit specifically says that no argument, unlike here, was made to them that the transitional provisions didn't intend for this definition to be applied in the context of deportation proceedings. I know my time is up. If I could, I just wanted to emphasize that, and of course we rely upon our brief, but I would submit that both Leopold and Lopez establish a new world with respect to the definition of aggravated felony, putting emphasis on the term that's being defined, namely aggravated and felony, and that absent a clearer indication from Congress here, felony has to be part of the offenses being included. And at a minimum, this shows ambiguity, which under the rule of lenity or derail construction, as your Honor held in Francis, means that we should win the battle. Thank you. Mr. Grimes? Good morning. May it please the Court. My name is James Grimes. I'm here on behalf of the Attorney General. And we ask that the Court deny the petition for the reasons stated in our brief. Mr. Muskovsky is an aggravated felon, and that definition applies to him. Okay, but why? Why is he an aggravated felon? Well, he's an aggravated felon because he pled guilty to violating AUC 1324A2A, and the definition provision at 1101A43N makes violations of that provision an aggravated felony. In fact, 1324A2A is a misdemeanor provision, and the definition says that it falls within the term of an aggravated felony. So by the very terms of the definition, it falls within the term of an aggravated felony. If you're right about that, then let's go to Mr. Mosley's other argument. Why should we apply that definition? Why should we read 321C in this context? You may or may not agree, but even the equities here, and Mr. Mosley started out reminding us of the equities. This is someone who—there's a criminal offense, which is certainly—I don't want to minimize it, but we're not talking about a crack dealer here or an enemy combatant or anything else. He was giving a cab ride to some people that were aliens, other situations where he had a reckless disregard of their right to be here. Been in the United States for 20 years. I assume gainfully employed for most, if not all, of those 20 years, and all of a sudden now he's being sent back to Poland for no particular reason other than the fact he happened to be giving a cab ride to these folks in the car. He wasn't—I don't think you're alleging he was part of any smuggling ring. It's kind of like the guy in Patel, Mr. Patel. I know that doesn't figure into our legal analysis, but doesn't that put some meat on Mr. Mosley's arguments, bones, about what Congress intended and how we would apply 321C in actions taken in this context? Well, I would certainly concede that he does have a number of equities in his favor that Mr. Mosley has discussed, but I think this Court has to look to what it is that Congress said. The language of Section 321C commands that the amendment that added the new definition, which is 321A, quote, shall apply from here on out. It says it shall apply to actions that are taken on or after the date that ARERA was passed, which was September 30, 1996. So what definition are you urging us to adopt in terms of what actions taken mean? Well, Your Honor, I think it's a broad term because what 321 does is it amends the A definition in the definitional section, and those definitions apply throughout the Act. So it would have to be an action taken in which that definition is relevant under the Act, and as Judge Fischer addressed, that would necessarily have to at least be an action taken by the Attorney General. And here you have seven years of actions taken, seven years of hearings, you have a decision by the Immigration Judge and a final decision by the Board that all are actions taken under the Act. So I would urge that at the very least it would have to apply to the actions taken by the Attorney General in this case to deny relief where the amended definition is relevant. And initiating proceedings is not enough? Well, if proceedings are initiated after the Act, if it's relevant to whether or not the person is removable as an aggravated felon, then certainly that would be relevant. But here, I think what Congress was trying to do is you had this sort of chaotic patchwork of varying effective dates from the Immigration Act of 1990, you had another act in 91, 92, 94, and you had differing effective dates. And I think what Congress did through 321B and 321C was to just cut that off and make things plain and simple. The aggravated felony definition will apply no matter when the conviction was entered. And from here on out, Congress is saying, we don't care what happened before. From here on out, you will apply this definition. How should Section 309 work into our analysis? Well, I think that 309, if you look at the interesting 309A, is a provision in which Congress said the ARERA would generally not be effective until six months later, April 1, 1997. So Congress knew how to limit the reach of ARERA, but it didn't do so with respect to ARERA Section 321B and 321C. So that's sort of an indication that although Congress knew how to do that, it didn't do that in this case. It instead said, from here on out, apply this definition to actions taken. And as I said, we believe that that would include actions taken by the Attorney General. So although Judge McKee, he certainly does have some equities, I think he can't get past the legal analysis in this case. So would actions taken apply to judicial action? Well, that's an interesting question. I know there's some difference of opinion among the courts on that. The Eighth Circuit said that it would. The Ninth Circuit said that it wouldn't. I don't know that you have to answer that, but I would propose that this court's jurisdiction is controlled by the Act in this case. So there is certainly, it's not a stretch to say that this court is taking action under the Act and interpreting that. But I'm not pushing that. The obvious problem with that, and that's what the Ninth Circuit focused on, is that if we read actions taken to include all actions taken after the date to eliminate any ambiguity, we get into a situation where the act of taking jurisdiction deprives the court of jurisdiction, which makes no sense. But not in this case, Your Honor, does it, because he's not removable or deportable for the criminal offense. In this case, he's only removable for the non-criminal offenses. So that actually, that point wouldn't apply here, although I grant that it could apply in other cases. But if it does in other cases, that would seem to create an ambiguity, which would maybe then get us to the second step of the Lance graph since your analysis. Your Honor, in those cases that are initiated based upon an aggravated felony provision, the court would lack jurisdiction in either of that. So I don't know if I would agree with Your Honor's concern in that respect. Now, with respect to Mr. Mosley's statements about Tran, Tran, he was previously in deportation proceedings, but those proceedings were terminated. And so he was in removable proceedings that were initiated after Herrera. And when the court said there was no argument about the transition rules, that's right. There was no argument about the court's, the transition rules there, I believe, with respect to the court's jurisdiction and how that would apply. It really doesn't have any, it doesn't really matter to the analysis. So I would agree that, I think Tran supports our position in that it says that the term action taken applies to actions taken after Herrera was passed. So we would urge the court to apply the term to the actions that were taken in this case to find that Mr. Viskovsky is ineligible for relief, because as I mentioned, he is an aggravated felon as that term is defined, as that term of art is defined in the act. And so we would ask that you find that he is an aggravated felon and apply the definition to him. Now, I could address the law, the case arguments that Mr. Mosley raised in his brief, but I believe that even if that doctrine applies, it does not apply when there's been an intervening change in the law, which is what we have here. And I invite the court's attention finally to pages 343, 349, and 377 of the record. There you have some discussion about whether or not he was an aggravated felon. His counsel said that he was at page 343. That was not Mr. Mosley. I wanted to ask Mr. Mosley about that. So I just wanted to point that out. So in any event, we would ask that you deny the petition for the reasons I've stated, unless there are any further questions. Thank you. Thank you. Mr. Mosley, what about maybe our counsel wasn't quite as able or thorough or meticulous as you, but what about counsel's statement that he is an aggravated felon? Well, first of all, the board and the immigration judge did not affirm on that basis, so it's really not to the extent that it might be used as a concession, and I think it's far more ambiguous than I read the record. Both Chenery, for example, and Morad V. Karn would permit reliance upon that. Moreover, the immigration judge's decision is very confusing in that regard, because I don't think he holds certainly that he's an aggravated felon. Even the immigration judge doesn't do that. At one point he says, I'm not denying your eligibility for asylum because of your criminal conviction. That's at A3 or page 46 of the appendix. Not because of your criminal conviction, but because you failed a file on time. If the criminal conviction was an aggravated felony, then under those circumstances, that would have been a clear basis for denying asylum. He said there wouldn't have been jurisdiction for the petition anyhow. Right. I think your Honor hits upon a conundrum with respect to actions taken, because if you read 309C, the rules with respect to judicial review, it simply says that a person who is deportable for conviction of an aggravated felony gets no judicial review. So if you read actions taken broadly here, then Congress really has, with that provision, a strict jurisdiction, and of course the government quite candidly conceded it would certainly apply in other cases where other deportation cases where this was charged. With respect to the aggravated felony definition, I think this Court's decision in Nugent and the decision in Bob, which talks about the basic logic where you have a universal, in this case, aggravated felony, that all of the particulars under that have to include felony unless there's a specific indication to the contrary, would certainly, at the very least, create an ambiguity which should be resolved in our favor under the rule of lenity. That wouldn't require us to disregard the clear language of the statute, right? No, it wouldn't require you to disregard the clear language of the statute, Judge Chigueras, but if we take the basic proposition as the Supreme Court said in Leocal and in Lopez, that you have to look at what's being defined in Leocal, it was crime of violence, and in Lopez it was trafficking, you have to look at that when you make a determination about what is included here and the clear universal that's set forth here is felony, aggravated felony. Now, there may be sections where Congress specifically decided to include misdemeanors, but I would submit that there's no such clear signal by sentence or otherwise in 101-843-N. Weren't really Nugent and Bob cases that attempted to determine how to treat a conviction fell within two definitional sections as opposed to the case we have before us here? Well, that's the ultimate question presented in both of those, but I would submit, Judge Fischer, that the logical analysis used here, I'm not saying obviously that they're controlling, I am saying that the logical analysis applies here with equal force and, moreover, it's a force reinforced by the Supreme Court's decision in Leocal and Lopez.